IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN WILLIAM HANNA,<br>          Plaintiff,<br>v.<br>LEHIGH COUNTY DEPARTMENT OF CORRECTIONS, *et al.*,<br>          Defendants. | CIVIL ACTION NO. 22-4305 |

## MEMORANDUM OPINION

Rufe, J.                                                                                                                     March 25, 2024

*Pro se* Plaintiff Kevin W. Hanna filed suit against Defendants Warden Kyle Russell, Director of Corrections Janine Donate, Sergeant Maldonado, Sergeant Wildey, and Correctional Officer Ramos.[1] Defendants have moved to dismiss the Complaint. For the following reasons, the Court will grant in part and deny in part Defendants' Motion to Dismiss. Hanna will be given an opportunity to file an amended complaint.

I.     BACKGROUND

The facts as alleged in the Complaint are taken as true for purposes of the Motion to Dismiss. Hanna was committed to the Lehigh County Department of Corrections on July 22, 2022 and was a pretrial detainee.[2] After Hanna's assignment to cell 1C1-2, he notified staff that there was no running water.[3] The next day, maintenance staff attempted to repair the water system, but failed to do so.[4] Maintenance staff informed Hanna that the air conditioning for the

---

[1] Compl. [Doc. No. 2]. Hanna voluntarily withdrew his claims against Defendants Lehigh County Department of Corrections, Grievance Coordinator Douglas Mette, and Correctional Officer Jane Doe. *See* Pl.'s Resp. Opp'n Mot. Dismiss [Doc. No. 28] at 5, 11. Therefore, all claims against these three Defendants will be dismissed.

[2] Compl. [Doc. No. 2] ¶ 3.

[3] *Id.*

[4] *Id.*

cell was also broken, which was why the cell was "so hot."[5] Although maintenance staff returned on July 24 and July 25, they failed again to repair the water system.[6] Throughout this period, Hanna was forced to "eat in a cell with a toilet filled with urine and feces."[7]

Hanna notified "every staff member that walked by his cell about the water issue."[8] Hanna reported the issue to Defendant Maldonado on July 25, 2022, who responded by saying: "Oh well [too] bad[.] [G]ood luck suing[.] [H]ave a blessed day[.] [S]ound my name out and if you keep on complaining you will stay in this cell longer."[9] Later that same night, Hanna's cell mate was moved out of cell 1C1-2 to 2A-13, which had running water.[10]

On July 26, 2022, Hanna reported the issues with the cell to Defendant Ramos, who responded, "I'm not doing anything to help you."[11] Later that day, Hanna reported the issue to Defendant Wildey, who responded by saying "[w]e have been aware of the situation and maintenance can't fix the problem. You will have to get a grievance off of the unit counselor."[12] Hanna continued to sound his concerns through the intercom communication system, where an unidentified Jane Doe "kept hanging [up]" every time he spoke about the water issues or his medical conditions.[13] Hanna filed a grievance in response to these issues, which was rejected on August 16, 2022.[14] Hanna appealed, and on August 23, 2022, Defendant Warden Russell sent a

---

[5] *Id.*

[6] *Id.*

[7] *Id.* ¶ 5.

[8] *Id.* ¶ 4.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

memorandum to Hanna rejecting his appeal since he "did not complete Part B of the grievance form" and "did not date the grievance form."[15]

After filing his initial grievance, Hanna was moved to cell 2C-3, which housed Richard Paulson, "an inmate with a convicted homicide [charge] and a pending human sex [trafficking] charge."[16] Hanna asserts that Paulson and Hanna were both assigned the bottom bunk, so he was forced to sleep on the top bunk, despite his seizure disorder. A week later, Paulson was moved due to misconduct, and on August 11, 2022, inmate Gary Mertz, who was also assigned a bottom bunk, moved into Hanna's cell.[17] Mertz allegedly confided to Hanna that he was in pretrial detention for a "pending attempted homicide charge for stabbing his neighbor in the [neck] with a knife."[18] According to Hanna, Mertz was "suppose[d] to be housed alone due to his pending charge and him being HIV positive and being a violent offender."[19] Mertz had also tested positive for Hepatitis C.[20]

On August 18, 2022, Mertz assaulted Hanna with a dust broom handle while he was sleeping.[21] After Hanna disarmed his assailant, Mertz "bit [his] right middle finger and drew blood."[22] Hanna was taken to the medical department of the jail for assessment. Dr. Doloris ordered Sergeant Maldonado to give Hanna a shower immediately.[23] However, Hanna was not

---

[15] *Id.* at 9.
[16] *Id.* ¶ 4.
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*

provided a shower for over two hours.[24] Hanna was then prescribed Truvado, a post-exposure prophylaxis medication for people exposed to HIV.[25] After being transferred to the Federal Detention Center in Philadelphia, the staff discontinued Truvado, since it was "to[o] expensive to take for six month[s]."[26]

Hanna alleges numerous health issues because of the conditions at Lehigh County Jail, including "dehydration, [dizziness], [vomiting], headaches, depression, anxiety."[27] Hanna initiated this civil action on October 20, 2022, while confined at FCI Hazelton in West Virginia.[28] On November 30, 2022, the Court granted Hanna's request to proceed *in forma pauperis*.[29] Defendants filed their Motion to Dismiss on March 23, 2023,[30] to which Hanna responded.[31]

## II.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[32] The question is not whether the plaintiff will ultimately prevail, but whether the complaint is "sufficient to cross the federal court's threshold."[33] The Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any

---

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.* ¶ 5.

[28] Compl. [Doc. No. 2] at 8.

[29] Order [Doc. 7].

[30] Defs.' Mot. Dismiss [Doc. No. 22].

[31] Pl.'s Resp. Opp'n Mot. Dismiss [Doc. No. 28].

[32] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[33] *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

reasonable reading of the complaint, the plaintiff may be entitled to relief."[34] However, the court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'"[35] As Plaintiff is proceeding *pro se*, the Court construes his allegations liberally.[36] However, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim."[37]

Moreover, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8.[38] To conform to Rule 8, a pleading must contain a short and plain statement showing that the plaintiff is entitled to relief.[39] Dismissals under Rule 8 are "'reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'"[40]

### III. DISCUSSION

Tort claims alleging violations of constitutional rights may be brought in federal court under Section 1983 of Title 42 of the United States Code. To state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[41] "[I]t is well-established that an individual government defendant in an action

---

[34] *Philips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3rd Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3rd Cir. 2002)).

[35] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3rd Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)).

[36] *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

[37] *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

[38] *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019).

[39] *See Travaline v. U.S. Supreme Court*, 424 F. App'x 78, 79 (3d Cir. 2011).

[40] *Garrett v. Wexford Health*, 938 F.3d 69, 94 (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).

[41] *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

under 1983 must have had some personal involvement in the alleged wrongdoing to be held liable."[42]

Hanna asserts multiple claims, including violations of his constitutional rights under § 1983 and negligence. Hanna alleges "cruel and unusual punishment, harsh conditions, retaliation and blatant and intentional disregard for Hanna's safety"[43] and "Retaliation for Freedom of Speech . . . Deliberate Indifference, Negligence, and Equal Protection Violations."[44] Hanna does not specify which Defendant committed each alleged violation. Hanna alleges these claims collectively against Director of the Department of Corrections Donate, Warden Russell, Sergeant Maldonado, Sergeant Wildey, and Correctional Officer Ramos. The Court first addresses the allegations against Defendant Donate before analyzing the remaining substantive claims against Russell, Maldonado, Wildey, and Ramos.

A.   **Claims Against Defendant Director of Corrections Janine Donate**

Hanna has failed to state a claim against Director of the Department of Corrections Janine Donate because Hanna has not provided any facts that would put Donate on notice of what she has done or failed to do that caused a deprivation of Hanna's rights. Hanna did not mention Defendant Janine Donate's name once throughout the Complaint. The first substantive mention of Donate is in Hanna's Response to the Motion to Dismiss, in which he alleges that Donate's failure to inspect the jail facilities contributed to the broken air conditioning and water systems.[45] It is well-established that a "complaint may not be amended by the briefs in opposition to a

---

[42] *Valdez v. Danberg*, 576 F. App'x 97,100 (3d. Cir. 2014) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d. Cir. 2005)).

[43] Compl. [Doc. No. 2] at 8.

[44] *Id.* at 3.

[45] Pl.'s Resp. Opp'n Mot. Dismiss [Doc. No. 28] at 4–5.

motion to dismiss."[46] Therefore, Hanna's claims against Donate will be dismissed without prejudice to Hanna amending the Complaint to outline his specific allegations against Donate.

B. **Substantive Claims Against Defendants Russell, Maldonado, Wildey, and Ramos**

The Complaint can be distilled into four claims: (1) a Fourteenth Amendment due process claim alleging unconstitutionally harsh conditions in the Lehigh County Jail, (2) a Fourteenth Amendment equal protection claim, (3) a First Amendment retaliation claim, and (4) negligence. Each of the claims will be analyzed with respect to the remaining Defendants: Warden Russell, Sergeant Maldonado, Sergeant Wildey, and Correctional Officer Ramos.

1. *Fourteenth Amendment Due Process Claim*

All parties agree that Hanna was a pretrial detainee while incarcerated at the Lehigh County Jail.[47] As such, Hanna's allegations of cruel and unusual punishment are actionable under the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment.[48] A pretrial detainee may not be punished prior to an adjudication of guilt.[49] "If a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment."[50] On the other hand, if a condition is "not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment."[51] Under the Fourteenth

---

[46] *Reed v. Chambersburg Area Sch. Dist.*, 951 F. Supp. 2d 706, 720 (M.D. Pa. 2013) (citations omitted).

[47] Defs.' Mot. Dismiss [Doc. No. 22] at 12; Pl.'s Resp. Opp'n Mot. Dismiss [Doc. No. 28] at 7.

[48] *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979) (citing *Ingraham v. Wright*, 430 U.S. 651, 671-72 (1977)).

[49] *Id.*

[50] *Id.* at 539.

[51] *Union Cnty. Jail Inmates v. Di Buono*, 713 F.2d 984, 991 (3d. Cir. 1983) (quoting *Bell*, 441 U.S. at 539).

Amendment, a pretrial detainee is entitled "at a minimum, [to] no less protection" than a sentenced inmate is entitled to under the Eighth Amendment.[52]

The Complaint identifies three conditions of Hanna's confinement that could be liberally construed to allege a Fourteenth Amendment due process claim: (1) the unsanitary conditions of his first cell assignment, (2) his placement in a cell with violent inmates, including one testing positive for several communicable diseases, and (3) the lack of adequate medical care provided to him after he was attacked. The Court addresses each in turn.

### i. Unsanitary Conditions

Hanna alleges that his constitutional rights were violated when he was detained in an unsanitary cell. For a detention condition to violate the Fourteenth Amendment, it must amount to a punishment of the detainee.[53] A condition of confinement may be unconstitutional if (1) it is the result of an express intent to punish or (2) it is not rationally related to a legitimate government purpose.[54]

Hanna alleges he was without running water or air conditioning in the middle of the summer from July 22 to July 26, 2023.[55] Despite informing three prison employees and sounding his concerns on the intercom, he was forced to "eat in a cell with a toilet filled with urine and feces" during this period.[56] The conditions that Plaintiff endured cannot be "rationally related to a legitimate non-punitive government purpose"[57] nor are they *de minimus*, as Defendants

---

[52] *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000) (quoting *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 668 (3d Cir. 1988)).

[53] *Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008) (quoting *Bell*, 441 U.S. at 535).

[54] *Peele v. Delaney*, No. 12-4877, 2017 WL 467347, at *2 (E.D. Pa. Feb. 3, 2017) (citing *Bell*, 441 U.S. at 534, 538–39).

[55] Compl. [Doc. No. 2] at 3–4.

[56] *Id.* ¶¶ 4, 5.

[57] *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (citing *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999)).

suggest.[58] The Complaint states that Hanna brought the sanitation issues to the attention of Sergeant Maldonado on the first day of his confinement in cell 1C1-2. Sergeant Maldonado responded, "Oh well [too] bad[.] [G]ood luck suing[.] [H]ave a blessed day[.] [S]ound my name out and if you keep on complaining you will stay in this cell longer."[59] The following day, Hanna also brought the cell conditions to the attention of Defendant Ramos, who responded "I'm not doing anything to help you."[60] That same day, Hanna brought these conditions up again with Sergeant Wildey, who responded, "[w]e have been aware of the situation and maintenance can't fix the problem."[61] Accepting the allegations as true, Defendants Maldonado, Ramos, and Wildey were each individually made aware of the conditions in Hanna's cell and failed to address them.

"[L]iability cannot be predicated solely on the operation of respondeat superior."[62] To state a claim under § 1983, a state actor must have had some personal involvement in the alleged action.[63] Personal involvement can be established through "allegations of personal direction or of actual knowledge or acquiescence."[64] Hanna alleges that he "notified every staff member that walked by his cell about the water issue" and voiced his concerns through the intercom numerous times.[65] As Defendants themselves remark, Hanna "complain[ed] repeatedly to anyone

---

[58] Defs.' Mot. Dismiss [Doc. No. 22] at 12 (citing *Davis v. Glanz*, No. 15-11, 2015 WL 729696, at *3–4 (N.D. Okla. Feb. 19, 2015)).

[59] Compl. [Doc. No. 2] ¶ 4.

[60] *Id.*

[61] *Id.*

[62] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n. 3 (1981)).

[63] *Valdez*, 576 F. App'x at 100 (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d. Cir. 2005)).

[64] *Rode*, 845 F.2d at 1207.

[65] Compl. [Doc. No. 2] ¶ 4.

within earshot."[66] Maintenance was sent to his cell numerous times to fix the water and air conditioning, although they were unsuccessful.[67] Therefore, Hanna has pled sufficient facts to allege that Warden Russell had actual knowledge or acquiesced to the unsanitary conditions that Hanna was forced to endure. Hanna has alleged a violation of his Fourteenth Amendment due process rights against Russell, Maldonado, Wildey, and Ramos based on his lack of running water and his exposure to human waste for four days and four nights in a hot prison cell.

### ii. Placement in the New Cell

It is well-established that "an unsentenced inmate is entitled at a minimum, to no less protection than a sentenced inmate is entitled to under the Eighth Amendment."[68] Prison officials have a duty to take reasonable measures "to protect prisoners from violence at the hands of other prisoners."[69] However, "not 'every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety.'"[70] To state a claim against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to the inmate's health and safety, and (3) the official's deliberate indifference caused the inmate harm.[71]

---

[66] Defs.' Mot. Dismiss [Doc. No. 22] at 16.

[67] Compl. [Doc. No. 2] ¶ 3.

[68] *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (quoting *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000)) (internal quotations omitted).

[69] *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)).

[70] *Bistrian*, 696 F.3d at 367 (quoting *Farmer,* 511 U.S. at 834).

[71] *Id.*

10

Hanna was assaulted by inmate Mertz only one week after they began cohabitating in cell 2C-3.[72] Hanna alleges that Mertz confided in him that "he had a pending attempted homicide charge for stabbing his neighbor in the [neck] with a knife" and that Mertz was supposed "to be housed alone due to his pending charge and him being HIV positive and being a violent offender."[73] These facts demonstrate that Hanna faced a substantial risk of serious harm by his cohabitation with Mertz.

To state a claim of deliberate indifference, a plaintiff must plead facts suggesting that a prison official knew or was aware of an excessive risk to the plaintiff's safety.[74] Such a demonstration of knowledge may be proven through inference from circumstantial evidence.[75] Hanna has alleged facts that Mertz was supposed to be housed alone, but was, instead, placed in a cell with Hanna. Hanna alleges that Mertz was known as a violent offender.[76] These statements present a plausible inference that the prison officials knew of the substantial risk of housing Mertz in Hanna's cell. At this stage of the proceeding, Hanna is entitled to additional discovery to determine whether the Defendants were deliberately indifferent by keeping Hanna in a cell with a violent inmate who was "suppose[d] to be housed alone."[77]

### iii. Lack of Adequate Medical Treatment

The Constitution requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care, and [to] 'take reasonable measures to guarantee the safety of

---

[72] Compl. [Doc. No. 2] ¶ 4.

[73] *Id.*

[74] *Beers–Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 837).

[75] *Farmer*, 511 U.S. at 842.

[76] Compl. [Doc. No. 2] ¶ 4.

[77] *Id.*

the inmates.'"[78] The Supreme Court has established that prison officials violate the Constitution by "intentionally denying or delaying access to medical care."[79] To state a claim for failure to provide adequate medical care, an inmate must make "(1) a subjective showing that 'the defendants were deliberately indifferent to [his] medical needs' and (2) an objective showing that 'those needs were serious.'"[80] "A serious medical need includes one that has been 'diagnosed by a physician as requiring treatment.'"[81] Deliberate indifference is a "subjective standard of liability consistent with recklessness as that term is defined in criminal law."[82] "Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."[83] Failure to provide appropriate treatment as a means of cost saving may be an unconstitutional exercise of deliberate indifference to the medical needs of prisoners.[84]

After having his finger bitten by inmate Mertz, exposing him to a possible infection of Hepatitis C and HIV, Hanna alleges that "Dr. Doloris order[ed] [Sergeant] Maldonado to give

---

[78] *Farmer*, 511 U.S. at 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)).

[79] *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05, (1976)). Although Mr. Hanna is a pretrial detainee, the Third Circuit has stated that there is "no reason to apply a different standard than that set forth in *Estelle* (pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment) when evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment." *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d. Cir. 2003). Therefore, the Court applies the Eighth Amendment standard to assess Mr. Hanna's inadequate medical care claim.

[80] *Burgos v. City of Philadelphia*, 439 F. Supp. 3d 470, 487 (E.D. Pa. 2020) (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017)).

[81] *Ortiz v. Nutter*, No. 15-4689, 2016 WL 8735709, at *4 (E.D. Pa. Oct. 14, 2016) (citing *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003)).

[82] *Natale*, 318 F.3d at 582 (quoting *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000)).

[83] *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017).

[84] *See e.g.*, *Shultz v. Allegheny County*, 835 F. Supp. 2d 14, 22 (W.D. Pa. 2011) (holding that plaintiff stated a deliberate indifference claim where incarcerated woman died during pregnancy after receiving allegedly inadequate treatment from prison medical staff pursuant to a cost-cutting policy).

him Hanna a shower immediately," but that he was not given a shower for over two hours.[85] Liberally construing *pro se* Plaintiff's Complaint, Hanna alleges that Sergeant Maldonado deliberately disobeyed or delayed a medical professional's treatment order after Hanna was exposed to HIV and Hepatitis C. Therefore, Hanna's inadequate medical treatment claim may proceed against Maldonado and will be dismissed against Wildey, Ramos, and Russell.

Hanna also alleges he was prescribed Truvado, which he took until he was transferred to the Federal Detention Center in Philadelphia, where the medical staff discontinued the prescription since it was "[too] expensive."[86] These allegations are insufficient to state a claim against Defendants Russell, Maldonado, Wildey, and Ramos. None of the alleged facts suggest that Defendants were involved in the discontinuation of Truvado at another facility. As such, Hanna has failed to state a Fourteenth Amendment Due Process claim that the defendants were deliberately indifferent to his post-exposure medical treatment.

Liberally construing the Complaint, Hanna next alleges that Defendants Maldonado, Wildey, Ramos, and Russell were deliberately indifferent to his need for a bottom bunk. The "[f]ailure to provide bedding is not a cognizable claim" for violations of an inmate's constitutional rights.[87] However, the failure of prison officials to provide a bottom bunk to an inmate to accommodate their medical needs, if adequately pled, is sufficient to survive a motion to dismiss.[88] Hanna alleges that he was assigned the bottom bunk of a cell due to his seizure

---

[85] Compl. [Doc. No. 2] ¶ 4.

[86] *Id.*

[87] *McCoy v. Bledsoe*, No. 11-1673, 2012 WL 5463102, at *6 (M.D. Pa. Aug. 16, 2012); *see also Adderly v. Ferrier*, 419 F. App'x 135, 139–40 (3d Cir. 2011) (holding that denial of clothing, toiletries, legal mail, mattress and shower for seven days did not constitute a denial of the minimal civilized measures of life's necessities).

[88] *See, e.g.*, *Jones v. McKoy*, No. 13-7832, 2019 WL 949414, at *4 (D.N.J. Feb. 26, 2019) (holding that plaintiff-inmate's allegations were sufficient to survive the court's preliminary screening as a claim of deliberate indifference to a serious medical need where a medical pass entitled him to assignment to a bottom bunk because of his knee and back injuries).

disorder.[89] Despite Hanna's assignment, Paulson and Mertz, who were both also assigned a bottom bunk, were moved into Hanna's cell.[90] As a result, Hanna was forced to occupy a top bunk despite his seizure disorder.[91] Deference to Hanna's pro se status requires the Court to permit Hanna discovery on this claim to determine if the Defendants contravened a medical professional's direction by failing to provide him with a bottom bunk.

        2.        *Equal Protection Claims – 42 U.S.C. § 1983*

Hanna alleges that his equal protection rights, afforded to him under the Fourteenth Amendment of the United States Constitution, were violated. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."[92] To establish an equal protection claim, Hanna must allege the existence of purposeful discrimination and demonstrate that he received different treatment from others similarly situated.[93] "A plaintiff's failure to allege any facts showing that he was treated differently than any similarly situated individuals is fatal to his equal protection claim."[94]

Hanna alleges only minimal facts in support of his equal protection claim. He contends that his first cellmate, Moser, was transferred to a cell with running water a day earlier than

---

[89] Compl. [Doc. No. 2] ¶ 4.

[90] *Id.*

[91] *Id.*

[92] *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v.* Doe, 457 U.S. 202, 216 (1982)).

[93] *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990) (citations omitted); *see also Tarapchak v. Lackawanna County*, 173 F.Supp.3d 57, 79 (M.D. Pa. 2016); *Talbert v. Evers*, No. 21-2505, 2021 WL 3033772, at *7 (E.D. Pa. July 19, 2021) (citations omitted).

[94] *Collura v. Ford*, No. 13–4066, 2016 WL 409228, at *18 n. 17 (E.D. Pa. Feb. 3, 2016) (internal quotation omitted).

Hanna because "Hanna was complaining about the broken cell."[95] However, Hanna has failed to allege any facts to demonstrate that he was similarly situated to his first cellmate, Moser. This failure is "fatal" to Hanna's equal protection claim.[96] Accordingly, Hanna's equal protection claim must be dismissed without prejudice to him filing an amended complaint.

### 3. First Amendment Retaliation Claims – 42 U.S.C. § 1983

Although Hanna alleges "Retaliation for Freedom of Speech" in his complaint,[97] Defendants do not address this claim in detail in their Motion to Dismiss.[98] The Court will address the First Amendment claim to determine whether Hanna has sufficiently pled facts to support this claim.

To state a claim for retaliation, a plaintiff must first plead facts showing that the conduct which led to the alleged retaliation was constitutionally protected.[99] Second, a prisoner litigating a retaliation claim must show that he suffered some "adverse action" at the hands of the prison officials.[100] A prisoner satisfies the adverse action requirement by "demonstrating that the action 'was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights.'"[101] Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."[102] Once the prisoner addresses causality, "the prison officials may still prevail by proving that they would have made

---

[95] Compl. [Doc. No. 2] ¶ 4.

[96] *Collura*, 2016 WL 409228, at *18 n. 17 (internal quotation omitted).

[97] Compl. [Doc. No. 2] at 3.

[98] Defendants contend that Defendant Janine Donate did not violate Hanna's First Amendment rights. However, they do not provide anything more than this conclusory statement. Defs.' Mot. Dismiss [Doc. No. 22] at 8.

[99] *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

[100] *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 224–25 (3d Cir. 2000)).

[101] *Id.* (quoting *Allah*, 229 F.3d at 225).

[102] *Id.* at 333–34 (citations omitted).

the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."[103]

Filing a grievance is constitutionally protected conduct.[104] Therefore, Hanna has alleged facts satisfying the first prong of a *prima facie* case of retaliation. The failure to protect one incarcerated individual from another or the placement of an inmate in a cell with other violent inmates may constitute an "adverse action."[105] In *Jefferson v. Little*, the Court allowed a plaintiff's First Amendment retaliation claim to proceed when the inmate alleged that correctional officers transferred a violent inmate into the plaintiff's cell in retaliation for the plaintiff filing a grievance.[106]

Here, the Complaint states that "after Hanna filed the initial grievance, [he] was moved to 2C-3 which also housed an inmate with a convicted homicide [charge] and a pending human sex [trafficking] charge . . . ."[107] The placement of Hanna with two allegedly violent inmates would deter a person of ordinary firmness from exercising their constitutional rights. In fact, Hanna did not face mere threats of violence—his fears were realized when he was assaulted by inmate Mertz, who bit his finger and exposed him to HIV and Hepatitis C.[108] Construing these allegations liberally, Hanna has adequately pled that an adverse action was taken against him.

---

[103] *Id.* at 334.

[104] *See Watson v. Rozum*, 834 F.3d 417, 422–23 (3d Cir. 2016) (holding that filing a grievance, or even demonstrating intent to file a grievance, is sufficient to establish the first prong of a *prima facie* case of retaliation); *See also Brant v. Varano*, 717 F. App'x 146, 149 (3d Cir. 2017) (holding that plaintiff-prisoner satisfied the first prong of a *prima facie* case where prison officials allegedly destroyed his "legal material" after he threatened a lawsuit); *Jefferson v. Little*, No. 22-2374, 2022 WL 14228884, at *4 (E.D. Pa. Oct. 24, 2022) ("A prisoner's filing of a grievance constitutes constitutionally protected conduct.") (citation omitted).

[105] *Freeman v. Miller*, No. 10-1545, 2011 WL 4591974, at *5 (M.D. Pa. Sept. 30, 2011).

[106] *Jefferson v. Little*, No. 22-2374, 2022 WL 14228884, at *5 (E.D. Pa. Oct. 24, 2022).

[107] Compl. [Doc. No. 2] ¶ 4.

[108] *Id.*

Hanna must also demonstrate a causal connection between the constitutionally protected conduct and the adverse action. The "timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation."[109] The alleged sequence of events may suggest a causal relationship between the filing of the grievance and Hanna's assignment to a new cell, as he was moved to 2C-3 "after [he] filed the initial grievance."[110] Accordingly, Hanna's retaliation claim will not be dismissed as to Defendants Russell, Maldonado, Wildey, and Ramos.

### 4. Negligence

The tort of negligence, while cognizable under state law, does not amount to a denial of a constitutional or federally protected right which can be addressed under § 1983.[111] Under Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), a local agency and its employees are granted immunity from tort liability, with only a few narrow exceptions.[112] Moreover, "Pennsylvania law has long immunized municipal employees from civil tort liability unless they act with 'willful misconduct.'"[113] The PSTCA thus effectively bars all negligence actions against counties and their employees, unless brought under one of the enumerated statutory exceptions.[114] The exceptions to immunity are to be "strictly and narrowly

---

[109] *White v. Greene*, No. 23-3113, 2023 WL 5962096, at *6 (E.D. Pa. Sept. 12, 2023) (citing *Watson*, 834 F.3d at 422).

[110] Compl. [Doc. No. 2] ¶ 4.

[111] *See Nettles v. Rundle*, 453 F.2d 889, 889 (3d Cir. 1971) (dismissing suit alleging negligent handling, diagnosis, or treatment of state prisoner's medical complaint as not actionable under § 1983).

[112] 42 Pa. Cons. Stat. Ann. §§ 8541-50.

[113] *Martin-McFarlane v. City of Philadelphia*, 299 F. Supp. 3d 658, 672–73 (E.D. Pa. 2017) (quoting 42 Pa. Const. Stat. Ann. § 8550); *see also McNeal v. City of Easton*, 598 A.2d 638, 642 (Pa. Commw. Ct. 1991) (establishing that a "finding of 'willful misconduct' under § 8550 requires a party to have acted with even more than gross negligence or recklessness").

[114] The exceptions include negligence with respect to (1) vehicle liability, (2) care, custody or control of personal property, (3) real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, (8) care, custody or control of animals, and (9) sexual abuse. *See* 42 Pa. Const. Stat. Ann. § 8542.

construed."[115] As none of the exceptions are applicable to the facts alleged, the Court must dismiss Hanna's negligence claim as barred.

### C. Qualified Immunity

Defendants contend that the individual prison officials and employees are shielded from liability for civil damages under § 1983.[116] "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[117] In evaluating whether an official is entitled to qualified immunity, courts must determine whether a Plaintiff has alleged the violation of a constitutional right and whether the right was "'clearly established' at the time of defendant's alleged misconduct."[118] A right is clearly established if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'[119] "To be clearly established, the very action in question need not have previously been held unlawful."[120] "Rather, the contours of the right must be sufficiently clear such that the unlawfulness of the action is apparent in light of pre-existing law."[121] It is plausible that the conditions that Hanna endured, as alleged, constitute a violation of clearly established constitutional rights. Further development of the record is required to determine whether qualified immunity applies.

---

[115] *Sugalski v. Commonwealth*, 569 A.2d 1017, 1019 (Pa. Commw. Ct. 1990); *see also Southersby Dev. Corp. v. Twp. of South Park*, No. 14-1248, 2015 WL 1757767, at *10 (W.D. Pa. Apr. 17, 2015) ("Because the legislative intent of the PSTCA is to insulate political subdivisions from liability, the exceptions to immunity are to be interpreted narrowly.") (citation omitted).

[116] Defs.' Mot. Dismiss [Doc. No. 22] at 16.

[117] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation and internal quotation marks omitted).

[118] *Id.* at 232 (citation omitted).

[119] *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

[120] *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 993 (3d Cir. 2014) (citation omitted).

[121] *Id.* (citations and internal quotation marks omitted).

## IV. CONCLUSION

The Defendants' Motion to Dismiss is granted in part and denied in part. An order will be entered.